IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ERNEST CARLOS TREVINO,**

      **Plaintiff,**

vs.                            **No. CIV 03-1178 DJS/RLP**

**CATRON COUNTY SHERIFF'S DEPARTMENT,
NEW MEXICO DEPARTMENT OF GAME AND
FISH, CATRON COUNTY MAGISTRATE COURTS,
SOCORRO DISTRICT ATTORNEY'S OFFICE,**

      **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** is before the Court on (1) State Defendants' Motion to Dismiss for

Failure to State a Claim Upon Which Relief May [Be] Granted **[Doc. No. 4]**, filed on May 4,

2004; (2) Catron County Sheriff's Department's Motion to Dismiss **[Doc. No. 8]**, filed May 7,

2004; (3) Defendant Shane Atwood's Motion to Dismiss for Failure to State a Claim Upon Which

Relief Can Be Granted **[Doc. No. 12]**, filed May 7, 2004; and (4) Defendant New Mexico Game

and Fish Department's Motion to Dismiss **[Doc. No. 15]**, filed May 28, 2004.  State Defendants

include District Attorney Clinton Wellborn with the Office of the Seventh Judicial District

Attorney and Clayton T. Atwood[1] with the Catron County Magistrate Court.  Catron County

Defendants include Catron County, Undersheriff Shawn Menges and Deputy Sheriff Michael

Yost.  Game and Fish Department Defendants include Director Bruce C. Thompson, Regional

---

[1] On May 25, 2004, Risk Management Legal Bureau, through counsel, filed Notice of Correction to Typographical Error [Doc. No. 14], informing the Court of a typographical error, to wit: Defendant Clayton T. Atwood is incorrectly referred to as "Atwell."

Game and Fish Supervisor Leon Redman, Bobby Griego, head of the Game and Fish Department in Reserve, New Mexico, and Conservation Officer Ryan Luna.  Defendant employees of the New Mexico Department of Game and Fish enforce the Game and Fish laws.  Conservation officers are authorized by law to check hunting and fishing licenses and issue citations for violations of hunting and fishing laws.

Plaintiff, appearing *pro se*, has not responded to any of Defendants' motions to dismiss. Relying on Plaintiff's failure to respond to the motions to dismiss, Defendants have filed the following motions: (1) Defendant Catron County Sheriff's Department's Motion to Summarily Grant Motion to Dismiss **[Doc. No. 17],** filed on June 4, 2004; (2) State Defendants' Motion to Summarily Grant Motion To Dismiss **[Doc. No. 18],** filed on June 18, 2004; (3) Defendant New Mexico Game and Fish Department's  Motion to Summarily Grant Motion to Dismiss **[Doc. No. 19]**, filed on June 18, 2004; and (4) Defendant Shane Atwood's Request for Summary Determination Granting Motions to Dismiss **[Doc. No. 23]**, filed on July 12, 2004.

Having reviewed the motions, the memoranda in support and in opposition, and the applicable law, the Court finds as follows: (1) State Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May [Be] Granted is granted; (2) Catron County Sheriff's Department's Motion to Dismiss is granted in part and denied in part; (3) Defendant Shane Atwood's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted is denied; and (4) Defendant New Mexico Game and Fish Department's Motion to Dismiss is denied.  Additionally, all of Defendants' motions to summarily grant their motions to dismiss on the grounds that Plaintiff has failed to respond to their motions are denied.

2

## I.  Factual Background

On September 11, 2003, Plaintiff left Texas for an elk hunt in Catron County, New Mexico.  Gary Wisdom accompanied Plaintiff on this hunt.  On September 13, 2003, Eddie Atwood, a Catron County resident, contacted Plaintiff and Mr. Wisdom.  Eddie Atwood previously had assisted Plaintiff and Mr. Wisdom on hunts in New Mexico.  Plaintiff and Mr. Wisdom had tags for hunting in the16A area.  On September 14, 2003, Plaintiff and Mr. Wisdom decided to hunt in an area requiring a 16A tag.  Plaintiff contends they did not enter Defendant Shane Atwood's property.  Plaintiff and Mr. Wisdom crossed another individual's property to get to national forest land.  However, the individual's wife gave Plaintiff and Mr. Wisdom permission to cross their property.

After Plaintiff and Mr. Wisdom reached the hunting area, they began to get their hunting gear ready.  While they were getting ready, Plaintiff heard a horse coming up the trail.  Plaintiff recognized the man on the horse and greeted him.  Defendant Shane Atwood did not respond to Plaintiff and approached them.  With a threatening voice, Defendant Shane Atwood questioned Plaintiff and Mr. Wisdom.  Defendant Shane Atwood asked Plaintiff and Mr. Wisdom what they were doing in the national forest and whether they had his permission to be there.  Defendant Shane Atwood told Plaintiff and Mr. Wisdom that "two assholes from Texas had drawn tags in 16A and yet he couldn't get one."  Supplement to Compl., Unnumbered p. 2, Supporting Facts.  Plaintiff attempted to explain to Defendant Shane Atwood that he knew him.  Defendant Shane Atwood responded by saying, "I don't know your stupid Mexican ass."  *Id*.  Defendant Shane Atwood told Plaintiff and Mr. Wisdom that they did not have his permission to hunt there.  Defendant Shane Atwood called Plaintiff and Mr. Wisdom "yo yo's from Texas."  *Id.*  After

twenty minutes of insults and harassment, Mr. Wisdom became angry and informed Defendant

Shane Atwood they did not need his permission to hunt on national forest land.  Mr. Wisdom also

informed Defendant Shane Atwood they now knew the 400 class bull was in the 16A area.

Defendant Shane Atwood became irate and leaned back in his saddle and appeared to be reaching

for a gun at the rear of his saddle.  Plaintiff and Mr. Wilson feared for their lives since they were

archery hunting and had no firearms to defend themselves.  Defendant Shane Atwood threatened

Plaintiff and Mr. Wisdom by telling them he could take care of them from his saddle.

Plaintiff pleaded with Defendant Shane Atwood to leave them alone and told him they did

not want any trouble.  To appease Defendant Shane Atwood, Plaintiff informed him that he had

met Defendant Shane Atwood's parents and had hunted with his son.  Plaintiff asked Defendant

Shane Atwood why he was so angry with them.  Defendant Shane Atwood told Plaintiff he did

not know him and was angry because they had not called him to ask permission to hunt in the

area.  Defendant Shane Atwood also told them that he had been watching them since they arrived

and added that "those elk [you] have been hunting sure spook easy when you ride behind them

with a horse."  Supplement to Compl., Unnumbered p. 2, Supporting Facts.  Mr. Wisdom told

Defendant Shane Atwood they would hunt that evening and then leave to avoid any problems.

Defendant Shane Atwood responded that he could ride his horse anywhere he pleased while they

were hunting.  Fearing for his life, Plaintiff pleaded with Defendant Shane Atwood to "just leave

them alone." *Id.*  Defendant Shane Atwood left.

Plaintiff and Mr. Wisdom then built a "ground blind by rock tank." *Id.* at Unnumbered p.

3, Supporting Facts.  Forty-five minutes later, during prime hunting time, Defendant Shane

Atwood rode his horse around the tank.  Defendant Shane Atwood made as much noise as

possible by breaking tree limbs and riding his horse on the rockiest areas instead of on the trails. Plaintiff and Mr. Wisdom ended the evening without seeing one elk. Plaintiff and Mr. Wisdom have been hunting this area since 1997. In the past, Plaintiff and Mr. Wisdom have hunted in the same area and have always spotted at least one elk. In fact, Mr. Wisdom previously had killed a 300 class bull in the same area. Plaintiff contends they never had any problem with Defendant Shane Atwood when the area had no quotas on elk. However, since the area became a 16A area and people have to pay a significant amount to hunt the area, Defendant Shane Atwood was very hostile toward Plaintiff and Mr. Wisdom.

On the evening of September 16, 2003, Plaintiff and Mr. Wisdom left the canyon and drove to the Catron County Sheriff's Department in Reserve, New Mexico. They filed a police report with Deputy Michael Yost. Plaintiff and Mr. Wisdom reported the events of the day and the trouble they had with Defendant Shane Atwood. Plaintiff and Mr. Wisdom stressed the fact that Defendant Shane Atwood had a gun and threatened them with it. Deputy Michael Yost asked them if Defendant Shane Atwood had pulled the gun on them. Plaintiff explained that Defendant Shane Atwood had acted very hostile and his actions indicated he would use it. Plaintiff repeated that Defendant Shane Atwood told them "he could take care of them from his horse if need be." Supplement to Compl., Unnumbered p. 3, Supporting Facts. Nonetheless, Deputy Michael Yost directed Plaintiff and Mr. Wisdom to contact Game and Fish Officer Griego in the morning because it was a game and fish violation. Plaintiff requested Deputy Yost talk to Defendant Shane Atwood because Plaintiff felt threatened by him since he knew where they were camping and felt Defendant Shane Atwood was "capable and hostile enough to hurt [them]." *Id.*

Again, Deputy Yost told them to drive to Reserve after the morning hunt and talk with Game and Fish Officer Griego.  Plaintiff and Mr. Wisdom reluctantly agreed to do so.

On September 17, 2003, at approximately 9:00 a.m. Plaintiff and Mr. Wisdom "made contact at [their] camp with Game and Fish Officer Ryan Luna."  *Id.*  Apparently, Officer Ryan was checking licenses.  Plaintiff and Mr. Wisdom explained the situation to Officer Luna.  Officer Luna stated that Defendant Shane Atwood was wrong and would talk with him.  Officer Luna informed Plaintiff and Mr. Wisdom that because they had 16A tags they had a right to hunt in the area.  Officer Luna told Plaintiff and Mr. Wisdom he would seek assistance from Bobby Griego in filing Hunter Harassment charges against Defendant Shane Atwood.  Supplement to Comp., Unnumbered p. 8.

On the same day, at approximately 10:00 a.m. to 11:00 a.m., Plaintiff and Mr. Wisdom decided to drive into Reserve to a local hotel to take showers.  On the way to Reserve, they stopped to check out a water trough not far from their camp.  Plaintiff and Mr. Wisdom had seen elk drinking from the trough the previous day.  They drove through a gap near some corral pens about 100 to 130 yards from the roadway into the national forest and parked.  Plaintiff and Mr. Wisdom inspected the area around the water trough for signs of elk footprints.  Not finding much activity in the area, Plaintiff and Mr. Wisdom walked back to their truck.  As they were walking toward the truck, a green truck pulling a cattle trailer drove up the mountain past their truck.  Plaintiff told Mr. Wisdom that he thought the man in the green truck was Defendant Shane Atwood.  Defendant Shane Atwood backed down the hill about 40 to 60 yards before turning the truck toward Plaintiff and Mr. Wisdom.  Defendant Shane Atwood's actions were very aggressive, causing Plaintiff and Mr. Wisdom to fear for their lives.

Once down the mountain, Defendant Shane Atwood blocked the exit with his truck and yelled at Plaintiff and Mr. Wisdom, "Didn't I just have this conversation about where y'all are hunting." Supplement to Compl., Unnumbered p. 4, Supporting Facts. Plaintiff responded that they had talked with the sheriff and the game warden and were told their tags gave them permission to hunt on national forest land in area 16A. Defendant Shane Atwood responded, "I don't give a f— who you talked to." *Id.* Plaintiff pleaded with Defendant Shane Atwood to leave them alone. Defendant Shane Atwood told Plaintiff, "I'm going to kick your fat ass." *Id.* Not knowing if Defendant Shane Atwood had his gun, Plaintiff and Mr. Wisdom feared for their lives. Defendant Shane Atwood got out of his truck and went toward Plaintiff threatening, "I'm going to f— you up fat boy." *Id.* Plaintiff attempted to avoid a fight by going behind the fence. When Defendant Shane Atwood went around the fence to get to Plaintiff, Mr. Wisdom intervened by getting in between Defendant Shane Atwood and Plaintiff. Defendant Shane Atwood swung wildly at Mr. Wisdom. He struck Mr. Wisdom on the head. Mr. Wisdom fought back to protect himself. Defendant Shane Atwood and Mr. Wisdom fell to the ground and rolled around hitting each other. Plaintiff tried to pull them apart. Defendant Shane Atwood struck Plaintiff on the right arm and kicked him on the right forearm and left foot. Defendant Shane Atwood lunged at Mr. Wisdom again. They fell to the ground and fell on some rocks. Plaintiff pulled them apart once more. Defendant Shane Atwood was bleeding around the nose area. Plaintiff offered to help him. Plaintiff explained to Defendant Shane Atwood that they needed to go to the Sheriff's Department and sort things out. In response, Defendant Shane Atwood swung wildly at Plaintiff, barely missing him. Defendant Shane Atwood then told them, "I'm going to kill you bastards." Supplement to Compl., Unnumbered p. 4, Supporting Facts. Mr. Wisdom then asked him, "What

did you say?"  *Id.*  Defendant Shane Atwood responded, "I said I was going to f— you up."  *Id.*

Mr. Wisdom told Defendant Shane Atwood he had heard him threaten to kill them.  Defendant

Shane Atwood then drove away toward the mountain and away from town.  Plaintiff and Mr.

Wisdom drove straight to the Catron County Sheriff's Department and reported the incident.

Plaintiff and Mr. Wisdom spoke with Undersheriff Shawn Menges.  They explained the

situation and reported Defendant Shane Atwood had threatened to kill them.  Undersheriff

Menges informed them he would try to find Defendant Shane Atwood.  Undersheriff Menges

advised Plaintiff and Mr. Wisdom to proceed with their plans.  Plaintiff told Undersheriff Menges

that Defendant Shane Atwood needed medical attention.  Plaintiff also identified himself as a San

Antonio Police detective and informed Undersheriff Menges that he wanted to file charges against

Defendant Shane Atwood for assault and "terroristic threats."  *Id.*  Plaintiff and Mr. Wisdom

reiterated their concern that Defendant Shane Atwood had threatened to kill them.  Undersheriff

Menges dismissed their concerns and stated, "No, he's not going to do that."  *Id.*  Undersheriff

Menges left the Sheriff's Department in search of Defendant Shane Atwood.

Plaintiff and Mr. Wisdom went across the street to a local motel and showered.  After they

showered they returned to the Sheriff's Office and asked for Undersheriff Menges.  The

dispatcher told them Undersheriff Menges was still out in the field.  The dispatcher contacted

Undersheriff Menges over the radio.  Undersheriff Menges instructed Plaintiff and Mr. Wisdom to

return to their camp and he would meet them there.  Plaintiff and Mr. Wisdom returned to their

camp in Devils Park knowing Defendant Shane Atwood knew the location of their campsite.

When they arrived at their campsite, there was no one waiting for them.  Feeling threatened and

fearful for their lives, Plaintiff and Mr. Wisdom decided to pack up their camp and leave.  Because

their mobile phones did not work in the mountains, they were unable to contact Undersheriff

Menges.  It took almost an hour to pack up their camp, yet Undersheriff Menges never showed

up.

Plaintiff and Mr. Wisdom returned to Reserve and went to the Sheriff's Department.  They

asked for Undersheriff Menges.  The dispatcher informed them Undersheriff Menges was in

Devils Park "with a situation."  Plaintiff told the dispatcher to tell Undersheriff Menges they were

at the station. Undersheriff Menges told Plaintiff and Mr. Wisdom over the radio that he could not

come in because he had found Defendant Shane Atwood and had "a situation."  This confirmed

Plaintiff's and Mr. Wisdom's suspicion that Defendant Shane Atwood was after them in Devils

Park.  At this point, Plaintiff wondered if the "situation" was a standoff between Defendant Shane

Atwood and Undersheriff Menges.  Undersheriff Menges told Deputy Sheriff Michael Yost to

take their statements.  It took Plaintiff and Mr. Wisdom an hour to write their statements.  They

asked Deputy Yost to escort them out of town.  Deputy Yost escorted them to the county line.

Plaintiff and Mr. Wisdom drove all night until they reached Pleasanton, Texas.

On September 19, 2003, Plaintiff called Bobby Griego, head of the Game and Fish

Department in Reserve, New Mexico.  Officer Griego informed Plaintiff he had probable cause to

file Hunter Harassment charges against Defendant Shane Atwood.  On the same day, Plaintiff

called Undersheriff Menges, twice.  Undersheriff Menges never responded to Plaintiff's calls.

Plaintiff called Undersheriff Menges on September 22, 2003,  and received no call.

On September 23, 2003, Plaintiff finally reached Undersheriff Menges.  Supplement to

Compl., Unnumbered p. 13.  Undersheriff Menges informed Plaintiff he was filing assault charges

against Plaintiff and Mr. Wisdom because he believed Defendant Shane Underwood's version of

the facts.  Undersheriff Menges also informed Plaintiff he was filing kidnaping charges against them.  Plaintiff protested.  Plaintiff also reminded Defendant Undersheriff Menges "what about all the reports before hand to avoid this confrontation which his sheriff (sic) dept could have talked with Mr. Underwood."  *Id.*  Undersheriff Menges stressed that they did things differently than in San Antonio.  Plaintiff then questioned Undersheriff Menges regarding the charge of kidnaping and how he wrote his report to include this charge.  Undersheriff Menges told him it was none of his business.  Plaintiff than brought out the fact that it was a racial issue because Defendant Shane Atwood did not like Mexicans.  Plaintiff stated Defendant Shane Atwood had told him many time on the mountain that he did not like Mexicans.  Undersheriff Menges responded "Oh, that doesn't sound like his character to say that.  Well you are a Meskin right?  Why are you so offended by those words."  *Id.*  Undersheriff Menges assured Plaintiff he had photos of Defendant Shane Atwood's injuries and the District Attorney was working very hard to indict them.  Plaintiff reminded Undersheriff Menges that he and Mr. Wisdom had asked that photographs be taken of their injuries but were told they were not needed.  Undersheriff Menges responded, "Get a good lawyer boy."  *Id.*  Plaintiff repeatedly asked Undersheriff Menges to assist him in filing a complaint against Defendant Shane Atwood but Undersheriff Menges refused.  Plaintiff also asked Undersheriff Menges why Defendant Shane Atwood was in Devils Park, the site of Plaintiff's and Mr. Wisdom's campsite.  Undersheriff Menges responded "to pack out an elk for some hunters."  *Id.*

On September 23, 2003, Plaintiff talked with Regional Game and Fish Supervisor Leon Redman.  Plaintiff informed Mr. Redman that he was having problems reaching Officer Griego. Mr. Redman told Plaintiff he and Officer Griego felt they had enough evidence to file Hunter

10

Harassment charges against Defendant Shane Atwood.  However, Mr. Redman told Plaintiff they would get back with him since "what went on in Catron county was their business."  Mr. Redman and Officer Griego have never contacted Plaintiff or Mr. Wisdom.

On September 29, 2003, Plaintiff obtained legal counsel in Socorro, New Mexico.  The attorney advised Plaintiff that "it was going to be tough to get fair treatment in Catron County" because "the Atwood family was one of the longest standing families in the county" and "had relatives in the commissioner's court and court system all the way to the DA's office in Socorro."  Supplement to Compl., Unnumbered p. 7.  The attorney also informed Plaintiff that the individual taking the complaint against him was Defendant Shane Atwood's uncle.

On September 30, 2003, Plaintiff spoke with Louis Montez with the F.B.I in San Antonio.  Mr. Montez took Plaintiff's statement and forwarded all the information to the Albuquerque F.B.I. office.

Plaintiff asserts he and Mr. Wisdom did everything to avoid a confrontation with Defendant Shane Atwood and sought help from the Catron County Sheriff's Department and the New Mexico Game and Fish Department prior to the altercation with Defendant Shane Atwood.  Plaintiff contends the Catron County Sheriff's Department and the New Mexico Game and Fish Department were negligent in not responding to their complaints and were thus responsible for Plaintiff and Mr. Wisdom being assaulted and battered by Defendant Shane Atwood.  Plaintiff also contends he "attempted to file assault charges and Hunter Harassment charges" against Defendant Shane Atwood, but he "was denied this right by the Catron County Sheriff's Department, the New Mexico Department of Game and Fish, Catron County Magistrate Clayton T. Atwood, and the Socorro District Attorney's Office."  Supplement to Compl., Unnumbered p. 5, 9.  Plaintiff

also contends he was discriminated against because he is a Mexican American, he is from out of state, and because he drew a permit to hunt in area 16A.   Supplement to Compl., Unnumbered p. 11.

Essentially, Plaintiff contends Defendant Shane Atwood, in contravention of N.M.Stat.Ann. § 17-2-7.1(A),[2] interfered by force with his right to participate in the elk hunting program sponsored by the New Mexico Department of Game and Fish and, although he complained to the proper authorities, he was denied equal protection of the law when the proper authorities took no action against Defendant Shane Atwood because of his position in the community.  Plaintiff also alleges Deputy Yost and Undersheriff Menges denied him equal protection of the law when he and Mr. Wisdom reported that Defendant Shane Atwood assaulted them and battered them, yet they took no action against Defendant Shane Atwood and would not allow them to file a complaint against Defendant Shane Atwood.  Plaintiffs also claims Undersheriff Menges falsely charged him with assault and false imprisonment.  Consequently, Plaintiff, a detective with the San Antonio Police Department, was placed on administrative leave

---

[2] Section 17-2-7.1(A) states in pertinent part:

It is unlawful for a person to commit interference with another person who is lawfully hunting, trapping or fishing in an area where hunting, trapping or fishing is permitted by a custodian of public property or an owner or lessee of private property.  N.M.Stat. Ann. 17-2-7.1 (1978).

Interference is defined by this section as: intentionally placing oneself in a location where a human presence may affect the behavior of a game animal, bird or fish or the feasibility of killing or taking a game animal, bird or fish with the intent of interfering with or harassing another person who is lawfully hunting, trapping or fishing; or intentionally creating a visual, aural, olfactory or physical stimulus for the purpose of affecting the behavior of a game animal, bird or fish with the intent of interfering with or harassing another person who is lawfully hunting, trapping or fishing;

pending investigation of the charges brought against him by Undersheriff Menges.  Plaintiff alleges the false charges and the resulting threat to his job caused him great mental anguish. Supplement Compl., Unnumbered p. 15.

Construing Plaintiff's *pro se* Complaint liberally, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Plaintiff alleges violations of his constitutional rights under 42 U.S.C. §§ 1983 and 1985(3) and state claims for malicious abuse of process and intentional infliction of emotional distress.  The Plaintiff also raises a cognizable claim under the Tort Claims Act against the law enforcement officers.

## II.  Standard of Review

In ruling on a motion to dismiss, the court must accept the factual allegations of the complaint as true.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 275 (10th Cir. 1996).  The court may dismiss only if it is clear that plaintiff cannot prove any facts entitling him to relief, or that the court could not grant relief under any set of facts plaintiff could prove consistent with his allegations.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Buckley Constr. Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 855 (10th Cir. 1991).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)(quotation omitted). In reviewing the sufficiency of a complaint, the issue is not whether the plaintiff will prevail but whether the plaintiff is entitled to offer evidence to support his claims.  *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002), *cert. denied*, 538 U.S. 999 (2003).  The court construes the

facts, and the reasonable inferences that might be drawn from them, in favor of the plaintiff.

*Beard v. City Northglenn, Colo.*, 24 F.3d 110, 115 (10th Cir. 1994).

### III.  Discussion

### A.  Motions to Summarily Grant Motions to Dismiss

As a preliminary matter, the Court will address all of Defendants' motions to summarily grant their motions to dismiss Plaintiff's Complaint on the grounds that he failed to respond to their motions to dismiss.  On June 4, 2004, Defendant Catron County Sheriff's Department filed its Motion to Summarily Grant Motion to Dismiss **[Doc. No. 17]**.  On June 18, 2004, State Defendants filed their Motion to Summarily Grant Motion To Dismiss **[Doc. No. 18]**.  On June 18, 2004, Defendant New Mexico Department of Game and Fish filed its Motion to Summarily Grant Motion to Dismiss **[Doc. No. 19]**.  On July 12, 2004, Defendant Shane Atwood filed a Request for Summary Determination Granting Motions to Dismiss **[Doc. No. 23]**.  In this request, Defendant Shane Atwood incorporated the authorities and arguments in the County Defendants' Motion to Summarily Grant Motion to Dismiss.

Relying on Local Rule 7.1(b), Defendants contend that, because Plaintiff failed to respond to their motions to dismiss, Plaintiff has consented to the Court's granting of the motions to dismiss.  *See* D.N.M.LR-Civ. 7.1(b).  Local Rule 7.1(b) provides: A motion, response, or reply must include a certificate of service on each party.  The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion.  However, in *Issa v. COMP USA*, 312 F.3d 1190 (10th Cir. 2002), the Tenth Circuit held that "a district court may not grant a motion to dismiss for failure to state a claim 'merely because [a party] failed to file a response.'"  *Id*. at 1177.   The Tenth Circuit found its

ruling consistent with the purpose of Rule 12(b)(6) of the Federal Rules of Civil Procedure which is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Id.* (citing *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)). Thus, even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, nonetheless, the district court must examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted. *Id.* at 1178. Accordingly, Defendant Catron County Sheriff's Department's Motion to Summarily Grant Motion to Dismiss is denied; State Defendants' Motion to Summarily Grant Motion To Dismiss is denied; Defendant New Mexico Game and Fish Department's Motion to Summarily Grant Motion to Dismiss is denied; and Defendant Shane Atwood's Request for Summary Determination Granting Motions to Dismiss is denied.

**B.  Motions to Dismiss**

### 1.  State Defendants' Motion to Dismiss

State Defendants include District Attorney Clinton Wellborn with the Office of the Seventh Judicial District Attorney and Clayton T. Atwood, a state magistrate with the Catron County Magistrate Court.  These Defendants argue that Plaintiff is not entitled to relief under the federal criminal statutes Plaintiff cited in his Complaint because they do not provide for a private right of action.  The Court agrees.  In his Complaint, Plaintiff cited to 18 U.S.C. §§ 241, 242, and 245.  These federal criminal statutes  provide for criminal sanctions, however, there is no private right of action under those provisions.  *See e.g., Larsen v. Larsen*, 671 F.Supp. 718, 719 (D.Utah1987).

Additionally, prosecutors enjoy immunity from liability for damages.  The nature of a prosecutor's immunity depends on the capacity in which the prosecutor acts at the time of the alleged misconduct.  *See, Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).  "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  *Kalina v. Fletcher*, 522 U.S. 118, (1997) (quotation omitted).  However, actions taken as an investigator enjoy only qualified immunity.  *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).  And, "generally, a judge is immune from a suit for money damages."  *Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam).  The Supreme Court has  recognized only two exceptions to this immunity from suit:  (1) "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity;" and (2) "a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction."  *Id.* at 11-12.

Plaintiff alleges Defendants District Attorney Wellborn and Defendant Clayton T. Atwood were involved in the conspiracy to falsely charge him with assault and false imprisonment. However, Plaintiff does not allege any facts that would indicate Defendant District Attorney Wellborn was not acting within the scope of his duties or that he was acting in an investigatory role.  Accordingly, Defendant District Attorney Wellborn's motion to dismiss on the grounds of absolute immunity is granted.

Defendant Clayton T. Atwood also is entitled to absolute immunity.  Plaintiff alleges Defendant Clayton T. Atwood is Defendant Shane Atwood's uncle.  Although presiding over his nephew's case was improper or at least gave the appearance of impropriety, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in

excess of his authority; rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).  Because Plaintiff does not allege facts supporting a finding that Defendant Clayton T. Atwood acted "in the clear absence of all jurisdiction," the Court will grant his motion to dismiss.

### 2.  Catron County Sheriff's Department's Motion to Dismiss

Defendant Catron County Sheriff's Department and Defendants Undersheriff Menges and Deputy Sheriff move the Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.  *See* Fed.R.Civ.P. 12(b)(6).  The Court construes Plaintiff's Complaint to include an action against the individual Defendants in their individual and official capacities.  Defendants raise the following arguments to support their 12(b)(6) motion: (1) 18 U.S.C. §§ 241, 242, and 245 do not constitute a legal basis for a private cause of action under 42 U.S.C. § 1983; (2) "allegations of negligence do not state a claim under section 1983 as a matter of law;"(3) Plaintiff's Complaint fails to state a claim against the Sheriff's Department under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); and (4) Plaintiff has not overcome the presumption of qualified immunity as to the individual defendants.  The Court has already ruled that §§ 241, 242, and 245 do not provide for a private cause of action.

The Court has liberally construed Plaintiff's Complaint to allege a cause of action under both 42 U.S.C. §§ 1983 and 1985(3).  Section 1983 provides a private cause of action for persons whose rights under the federal constitution or laws have been violated under color of state law. *See* 42 U.S.C. § 1983.[3]  Plaintiff alleges Defendants violated his rights to equal protection under

---

[3] Section 1983 provides in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be

the Fourteenth Amendment.[4]  The Fourteenth Amendment provides no state shall "deny to any

person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, §1.

"Although there is no general constitutional right to police protection, the state may not

discriminate in providing such protection."  *Watson v. City of Kansas City*, 857 F.2d 690, 694

(10th Cir. 1988); *see also, Maxey v. Banks*, 26 Fed.Appx.805, 808 (10th Cir. Nov. 21,

2001)(police officers violate the Equal Protection Clause if they selectively discriminate against

racial minorities in providing police protection or services); *Smith v. Gilpin County, Colo.*, 949

F.Supp. 1498, 1499 (D.Colo. 1996)(the state violates the Fourteenth Amendment's Equal

Protection Clause if it selectively denies its protective services to disfavored minorities).  Acts of

---

subjected, any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall
be liable to the party injured in an action at law, suit in equity,
or other proceeding for redress.  42 U.S.C. § 1983.

[4] It is unclear whether Plaintiff is alleging a § 1983 claim for
malicious prosecution and unlawful arrest in violation of the Fourth
Amendment or a state claim for malicious abuse of process, or both.
In order to prevail on a malicious prosecution claim under § 1983,
Plaintiff must establish a violation of his rights under the Fourth
Amendment.  *See Albright v. Oliver,* 510 U.S. 266 (1994).  Thus,
Plaintiff must show he was subjected to an unreasonable seizure in
violation of the Fourth Amendment.  *See Taylor v. Meacham*, 82 F.3d
1556, 1561 (10th Cir. 1996).  The Fourth Amendment is violated if law
enforcement officers knowingly  or with reckless disregard include
false statements in affidavits that form the basis for the issuance
of warrants.  *Id. at 1562.* It is also a Fourth Amendment violation to
knowingly or recklessly omit from the affidavit information which, if
included, would have vitiated probable cause.  *Id.*  Under the facts
of this case, it is questionable whether probable cause existed to
issue an arrest warrant had Undersheriff Menges included the facts as
alleged by Plaintiff.  *See also, Pierce v. Gilchrist*, 359 F.3d 1279
(10th Cir. 2004)("This Court has previously held that officers who
conceal and misrepresent material facts to the district attorney are
not insulated from a § 1983 claim for malicious prosecution simply
because the prosecutor, grand jury, trial court, and appellate court
all act independently to facilitate erroneous convictions.").

omission are actionable in this context to the same extent as acts of commission. *Smith*, 949

F.Supp. at 1500. To comport with the Equal Protection Clause, the law cannot be administered

"with an evil eye and an unequal hand." *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886). Thus,

"the essence of the equal protection requirement is that the state treat all those similarly situated

similarly," *Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001), with its "central

purpose [being] the prevention of official conduct discriminating on the basis of race [or other

suspect classifications,]" *Washington v. Davis*, 426 U.S. 229, 239 (1976).

      To state an equal protection claim, Plaintiff must allege that the government treated him

differently than others who were similarly situated. Plaintiff alleges that Undersheriff Menges and

Deputy Sheriff Yost discriminated against him, in violation of his Fourteenth Amendment right to

equal protection of the laws, when they failed to investigate his complaints against Defendant

Shane Atwood and denied him the right to file assault and battery charges against Defendant

Shane Atwood. Plaintiff alleges these Defendants discriminated against him because he is

Mexican. Plaintiff has alleged sufficient facts to state an equal protection claim. Plaintiff went to

the Sheriff's Department at least three times to complain about Defendant Shane Atwood.

Notably, Plaintiff informed Defendants that Defendant Shane Atwood had a gun and had

threatened to use it. Plaintiff requested assistance and protection from Defendant Shane Atwood,

but Undersheriff Menges and Deputy Sheriff Yost refused to act. Additionally, when Plaintiff

expressed his desire to file assault and battery charges against Defendant Shane Atwood,

Undersheriff Menges and Deputy Sheriff Yost denied him this right. However, when Defendant

Shane Atwood allegedly presented "his version" of the events in question, Defendant Menges

19

treated him differently and filed aggravated assault and false imprisonment charges against Plaintiff and Mr. Wisdom.

In their brief in support of their motion to dismiss, Defendants contend they are entitled to qualified immunity.  In the context of a 12(b)(6) motion to dismiss, the court's review of the qualified immunity defense is limited to the pleadings.  *Dill v. City of Edmond*, 155 F.3d 1193, 1203 (10th Cir. 1998).  As previously noted, the court must construe the allegations in the complaint and any reasonable inferences to be drawn from them in favor of Plaintiff.  *Beard v. City Northglenn, Col.,* 24 F.3d 110, 115 (10th Cir. 1994).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  To determine whether a plaintiff can overcome a qualified immunity defense, the Court must first "determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right."  *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996).

A right is "clearly established" where "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Finn v. New Mexico*, 249 F.3d 1241, 1250 (10th Cir. 2001)(quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  To be "clearly established," there must be a Supreme Court or a Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains.  *Murrell v. School Dist. No. 1, Denver*, 186 F.3d 1238, 1251 (10th Cir. 1999).

In this case, Plaintiff has alleged sufficient facts to establish a violation of his Fourteen

Amendment right to equal protection of the laws.   To overcome Defendants' defense of qualified

immunity, Plaintiff must also demonstrate that the constitutional right at issue was clearly

established at the time of Defendants' alleged actions.   The law was clearly established in 2003

that law enforcement officers could not discriminate against an individual on the basis of his race

or national origin.   It was also well established in 2003, that falsification or omission of evidence,

knowingly or with reckless disregard for the truth, in the context of information supplied to

support a warrant for arrest, was prohibited.   Accordingly, Undersheriff Menges and Deputy

Sheriff Yost are not entitled to qualified immunity.

Plaintiff also has alleged sufficient facts to support an action under the New Mexico Tort

Claims Act.  In *Schear v. Bd of County Commissioners of the County of Bernalillo*, 101 N.M.

671 (1984), the New Mexico Supreme Court considered the issue of whether a governmental

entity and its law enforcement officers may be held liable, after receiving notice, for negligently

failing to take adequate action to protect a citizen from imminent danger and injuries.  *Id.* at 672.

Citing to N.M.Stat.Ann. § 29-1-1,[5] the court found that law enforcement officers had a duty to

investigate violations of criminal law.  The Court further held that "law enforcement officers need

not be the *direct cause* of injury (in the sense of having inflicted it) in order for liability to attach."

*Id.* at 673.  In this case, Plaintiff reported to Deputy Sheriff Yost that Defendant Shane Atwood

had a gun and had assaulted him.  Plaintiff stressed to Deputy Sheriff Yost that he feared for his

---

[5] Section 29-1-1 states in pertinent part: "It is hereby declared to be the duty of every sheriff, deputy sheriff, constable and every other peace officer to investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware . . . ." N.M.Stat.Ann. 29-1-1.

life.  Rather than investigate, Deputy Yost directed Plaintiff to contact Game and Fish Officer

Griego in the morning because it was a game and fish violation.  After Defendant Shane assaulted,

battered and threatened to kill Plaintiff, Plaintiff returned to the Sheriff's Department and spoke to

Defendant Undersheriff Menges.  Plaintiff wanted to file charges against Defendant Shane

Atwood and specifically asked that Undersheriff Menges investigate the incident.  Plaintiff

reported Defendant Shane Atwood had threatened to kill Plaintiff.  Defendant Undersheriff

Menges instructed Plaintiff and Mr. Wisdom to proceed with their plans.  No charges were filed

against Defendant Shane Atwood.  Based on these fact, Plaintiff states a cause of action under the

Tort Claims Act against these Defendants.

      Plaintiff's Complaint also states a claim for malicious abuse of process.  The elements of

malicious abuse of process are as follows: (1) the initiation of judicial proceedings against the

plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as

would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in

misusing the process to accomplish an illegitimate end; and (4) damages.  *Devaney v. Thriftway*

*Marketing Corp.*, 124 N.M. 512, 518 (1997).  This cause of action protects "a plaintiff who has

been made the subject of legal process improperly, where the action was wrongfully brought by a

defendant merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his

or her personal rights."  *Weststar Mortgage Corporation v. Jackson*, 133 N.M. 114, 119 (2002).

Moreover, "favorable termination is not an element of an action for malicious abuse of process

but rather that an unfavorable termination has significance in demonstrating the existence of

probable cause."  *Devaney*, 124 N.M. at 521.

Under the first element, a defendant can be regarded as the instigator of the proceedings only if he communicates "material information falsely or inaccurately" and the prosecutor relies upon his statement or the defendant uses his power or position to influence the prosecutor in favor of prosecution. *Id.* at 121 (citing Dan B. Dobbs, *The Law of Torts* § 431) at 1217). Additionally, in order to charge a private person with responsibility for the initiating of proceeding by a public official, it must therefore appear that his desire to have the proceedings initiated expressed by direction, request, or pressure of any kind was the determining factor in the official's decision to commence the prosecution or that the information furnished by him upon which official acted was known to be false. *Id.* In this case, Plaintiff alleges Undersheriff Menges provided false information, resulting in a criminal complaint and indictment against him.

The second element requires an improper act constituting a misuse of process. "A misuse of process may be established by showing either a lack of probable cause or a procedural impropriety." *Id.* Plaintiff alleges that Undersheriff Menges told him he would file a criminal complaint against him, specifically told him he would be indicted, and then advised him to get a good lawyer. Plaintiff alleges he and Mr. Wisdom informed Undersheriff Menges and Deputy Sheriff Yost of the facts from the very first incident with Defendant Shane Atwood and contends Undersheriff Menges lacked probable cause to file the criminal complaint against him. "When the relevant facts are disputed, the role of the jury is to determine the disputed facts bearing on the probable cause question, that is, "the circumstances surrounding the filing of the complaint." *Id.* at 123. However, "[w]hether those facts constitute probable cause remains a matter for the trial court to determine." *Id.*

23

The third element requires the Plaintiff to prove that the defendant initiated the legal proceedings primarily to accomplish an illegitimate end. *Devaney v. Thriftway Marketing Corp.*, 124 N.M. 512, 522 (1997). The plaintiff must show that the defendant did more than act with ill will or spite. *Id.* Initiating proceedings primarily for the purpose of harassment is an improper purpose that can serve as the basis for a malicious abuse of process action. *Id.* As to damages, the *Devaney* court held that a "plaintiff has the burden of demonstrating actual damages for all forms of harm, including reputational or emotional harm." *Id.* at 290. Based on the facts, as alleged in the Complaint, Plaintiff states a claim for malicious abuse of process.

However, even construing Plaintiff's Complaint liberally, the Court does not construe it to read an allegation by Plaintiff that Defendant Catron County Sheriff's Department had some policy or custom that resulted in a violation of his constitutional rights. The touchstone of a § 1983 action against a governmental body is an allegation that official policy is responsible for deprivation of rights protected by the Constitution. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). Liability of a governmental body may not be premised on employment of a tortfeasor with liability imposed under a respondeat superior theory. *Id.* at 691. Governmental bodies can be held liable only when an injury was inflicted by execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Id.* at 694. Moreover, under § 1983, governmental bodies may be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels. *Id.* at 690-91. This is so "because of the persistent and widespread discriminatory practice of state officials," that while "[a]lthough not authorized by written law, such practices of state officials

24

could well be so permanent and well settled as to constitute a 'custom or usage' with the force of the law." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-168 (1970). Plaintiff has not alleged that Defendant Catron County Sheriff's Department maintained persistent and widespread discriminatory practices by its officials so as to constitute a "custom or usage" with the force of the law. Accordingly, the Court will grant Defendant Catron County Sheriff's Department's motion to dismiss.

### 3.  Defendant Shane Atwood's Motion to Dismiss

Defendant Shane Atwood moves the Court to dismiss Plaintiff's Complaint on the grounds that he is not a state actor. However, the Court has liberally construed Plaintiff's Complaint to allege a §1983 conspiracy and a §1985(3) conspiracy.

In order to hold a private individual liable under §1983 for a constitutional violation requiring state action, a plaintiff must show that the individual's conduct is "fairly attributable to the State." In *Lee v. Town of Estes Park*, 820 F.2d 1112 (10th Cir. 1987), the Tenth Circuit stated:

> [I]n order to hold a private individual liable under § 1983, it must be shown that the private person was jointly engaged with state officials in the challenged action, or has obtained significant aid from state officials, or that the private individual's conduct is in some other way chargeable to the State.

*Id.* at 1114. Recognizing the inherent difficulty of producing direct evidence of a conspiracy, the Court must proceed with caution in considering a pre-trial dismissal of a § 1983 conspiracy. *See Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980). Moreover, "[d]irect evidence of a conspiracy is rarely available, and the existence of a conspiracy must usually be inferred from the circumstances." *Id.* Addressing this issue, the Supreme Court in *Adickes* stated:

> The existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide.  In this case petitioner may have had to prove her case by impeaching the store's witnesses and appealing to the jury to disbelieve all that they said was true in the affidavits.  The right to confront, cross-examine and impeach adverse witnesses is one of the most fundamental rights sought to be preserved by the Seventh Amendment provision for jury trials in civil cases.  The advantage of trial before a live jury with live witnesses, and all the possibilities of considering the human factors, should not be eliminated by substituting trial by affidavit and the sterile bareness of summary judgment.

398 U.S. at 176.  In this case, Plaintiff has alleged sufficient facts to state a § 1983 conspiracy.

The facts, as alleged by Plaintiff, create an inference that Defendant Shane Atwood and

Undersheriff Menges conspired to falsely charge Plaintiff and Mr. Wisdom.  Defendant Shane

Atwood and his family are well known in the community and allegedly quite influential.

Undersheriff Menges and Deputy Sheriff Yost are well acquainted with Defendant Shane Atwood

as evidenced by the statements they made in defense of Defendant Shane Atwood.

The facts, indicate Undersheriff Menges found Defendant Shane Atwood at Devils Park,

Plaintiff's campsite, on the last day that Defendant Shane Atwood assaulted and battered Plaintiff.

Undersheriff Menges reported "a situation."  At the time, Plaintiff understood this statement to

mean a possible "stand off" with Defendant Shane Atwood.  However, Undersheriff Menges did

not direct Plaintiff to remain at the Sheriff's Department.  Instead, Undersheriff Menges directed

him to provide a written statement.  This took Plaintiff and Mr. Wisdom about an hour to

complete.  During that time, Undersheriff had the time and opportunity to take Defendant Shane

Atwood's statement and investigate the matter.  According to Undersheriff Menges, Defendant

Shane Atwood was at Devils Park "packing out an elk for some hunters."  This would indicate

Defendant Shane Atwood was capable of coming into Reserve to make a statement.  This

statement also contradicts Undersheriff Menges' statement that Defendant Shane Atwood was

"brutally beaten."  It also undermines Defendant Shane Atwood's claim that he was "brutally

beaten."   Additionally, Undersheriff Menges never explained what "the situation" was that he reported to the dispatcher.  It also is apparent that Undersheriff Menges knows Defendant Shane Atwood well enough to comment on his character.  Defendant Shane Atwood, a white male, is well known in the community and comes from a "long standing family in the county."  His standing in the community creates an inference that he was treated differently than Plaintiff. Accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff has alleged sufficient facts to state a § 1983 conspiracy.

Plaintiff's facts also support a § 1985(3) action.  Section 1985(3) reaches not only conspiracies under color of state law but also purely private conspiracies.  *Griffin v. Breckenridge*, 403 U.S. 88 (1971).  Section 1985(3) provides in part as follows:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  To state a claim under § 1985(3), a plaintiff must show: (1) a conspiracy, motivated by racially-discriminatory animus; (2) to deprive plaintiff of equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) a deprivation of rights resulting therefrom.  *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).  In this case, Plaintiff has alleged sufficient facts to demonstrate a racial, discriminatory animus on part of Defendant Shane Atwood and Undersheriff Menges.

Finally, Plaintiff has alleged sufficient facts to support a claim for malicious abuse of process. As noted above, a defendant can be regarded as the instigator of the proceedings if he communicates "material information falsely or inaccurately" and the prosecutor relies upon his statement or the defendant uses his power or position to influence the prosecutor in favor of prosecution. Plaintiff alleges that Defendant Shane Atwood provided false information and used his standing in the community to commence the proceeding against him. Based on the foregoing, the Court will deny Defendant Shane Atwood's motion to dismiss.

### 4.  Defendant New Mexico Game and Fish Department's Motion to Dismiss

Defendant New Mexico Game and Fish Department moves the Court to dismiss Plaintiff's Complaint on the grounds that (1) 18 U.S.C. §§ 241, 242, and 245 do not create private cause of action; (2) Defendant New Mexico Game and Fish is not a person under § 1983; and (3) Eleventh Amendment Immunity protects the State and state officials from being sued in federal court.

"Although citizens may not generally sue states in federal court under the Eleventh Amendment, the *Ex parte Young* doctrine has carved out an alternative, permitting citizens to seek prospective equitable relief for violations of federal law committed by state officials in their official capacities." *Lewis v. New Mexico Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001). In order to conclude that a plaintiff may proceed against the defendant state officials, the Court must find that the following four requirements are met: (1) the plaintiff is suing state officials, rather than the state itself; (2) the plaintiff has alleged a non-frivolous violation of federal law; (3) the plaintiff seeks prospective equitable relief, rather than retroactive monetary relief from the state; and (4) the suit does not implicate "special sovereignty interests." *Id.*

28

In this case, Plaintiff is suing New Mexico Department of Game and Fish officials, in their official and individual capacities.  Plaintiff's claim is non-frivolous, i.e. ,that the Game and Fish officials violated his Equal Protection rights under the Fourteenth Amendment.  Plaintiff seeks the following relief:  "To change departmental policy and procedures for the . . . New Mexico Department of Game and Fish . . . concerning Hunter Harassment . . . and the fair treatment of out of state hunters."   Supplement to Compl., Unnumbered p. 14, Request for Relief.  It appears Plaintiff is requesting prospective relief.  Finally, Plaintiff's suit does not implicate "special sovereignty interests."   Accordingly, Defendant New Mexico Game and Fish Department's motion to dismiss is denied.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that State Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May [Be] Granted **[Doc. No. 4]** is granted; Catron County Sheriff's Department's Motion to Dismiss **[Doc. No.** 8] is granted in part and denied in part; Defendant Shane Atwood's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted **[Doc. No. 12]** is denied; and Defendant New Mexico Game and Fish Department's Motion to Dismiss **[Doc. No. 15]** is denied.

**IT IS FURTHER ORDERED** that Defendant Catron County Sheriff's Department's Motion to Summarily Grant Motion to Dismiss **[Doc. No. 17]** is denied; State Defendants' Motion to Summarily Grant Motion To Dismiss **[Doc. No. 18]** is denied; Defendant New Mexico Game and Fish Department's Motion to Summarily Grant Motion to Dismiss **[Doc. No. 19]** is

denied; and Defendant Shane Atwood's Request for Summary Determination Granting Motions to Dismiss **[Doc. No. 23]** is denied.


**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**